AO (Rev. 5/85) Criminal Complaint

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | **CRIMINAL COMPLAINT** |
| vs. | |
| RYAN DENNIS LAWRENCE<br>CARL G. QUAMINA | CASE NUMBER:<br>8:09 MJ 1378 MAP |

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief. On or about July 30, 2009, in Sarasota County, in the Middle District of Florida, defendant(s) did,

Trafficking in Cocaine and firearms violations

in violation of Title 21, United States Code, Section(s) 841(a), and 18 United States Code, Section 922(g)(1) and (5) and 922 (o)(1). I further state that I am a(n) Special Agent with Alcohol, Tobacco, Firearms and Explosives, and that this Complaint is based on the following facts:

SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof:  ☒ Yes   ☐ No

_____
Signature of Complainant
James J. Booth

Sworn to before me and subscribed in my presence,

August 13, 2009                              at        Tampa, Florida

MARK A. PIZZO
United States Magistrate Judge                          _____
Name & Title of Judicial Officer                         Signature of Judicial Officer

N:\_Criminal Cases\L\Lawrence_Ryan_2009R0_msc\f_complaint_package.wpd

## AFFIDAVIT

I, James J. Booth being a Special Agent with the U.S. Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) swear to the following facts and circumstances:

I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), and have been so employed for approximately eight (8) years. During that period of time, I have conducted and been involved in numerous investigations involving violations of the Federal firearms, arson and explosive laws, as well as other violations of the United States Code, to include violent crimes and narcotic offenses. Prior to ATF I was employed by the United States Marshals Service (USMS) as a Deputy United States Marshal for approximately eight (8) years. During my employment with the USMS I conducted hundreds of fugitive investigations as a criminal investigator, with many investigations having narcotic and firearms nexuses. During the last two (2) months, I, along with members of the Sarasota Police Department have been conducting an investigation into the trafficking of illegal narcotics and Federal firearms violations committed by the defendant's herein, as well as by other subjects known to me and agents and officers working with me. As such, based on this investigation, I have learned the following information by first hand observations, by receiving information by other law enforcement officers working with me in this investigation, and by receiving information from confidential informant's (CI's) working with law enforcement personnel in this investigation:

The below-mentioned confidential informant's (herein referred to as CI is an individual who has been associated with the Sarasota Police Department and ATF for approximately one (1) year. During that time, the CI(s) has provided narcotics intelligence, purchased narcotics as a police agent under controlled circumstances, and has been the instrumental informant(s) for the purpose of search/arrest warrants, which have resulted in the arrest of persons for narcotics and firearm violations both Federally and State. Affiant knows this CI to be proven reliable.

1. On or about July 30, 2009, Sarasota Police Department (SPD) received information from a CI that a black male known as Ryan Dennis LAWRENCE, AKA "Trin", who resides at 1732 8th Street, Sarasota, Florida 34236, is trafficking in crack cocaine, powder cocaine, oxycontin, marijuana and other illegal narcotics from this residence.

2. The CI reported intelligence that subjects only known to them as "TRIN" and "CARL" are operating "trap houses" within the City of Sarasota and are selling large amounts of crack cocaine, powder cocaine, and prescription pills. SPD Detective Rob Armstrong has had previous investigations involving these subjects who are identified as the following: RYAN DENNIS LAWRENCE "TRIN", B/M, DOB 01/13/1975. A cellular phone number provided by CI's and other sources is 941-301-6623. Further investigation and intelligence revealed that LAWRENCE is a citizen of Tobago, Trinidad and is in the U.S. illegally.

CARL G. QUAMINA, B/M, DOB 08/17/1973, is a convicted felon. He was convicted for possession of a controlled substance without a prescription. Case Number 2006CF007254NC.

Previous information is that QUAMINA is an associate of LAWRENCE. LAWRENCE and QUAMINA have been connected as associates dating back to a Search Warrant conducted by SPD Detective Armstrong on 04/20/06.

3. On or about July 30, 2009, during the meeting with the CI, photographs from a M.U.G.S. search through the Sarasota County Jail was used to identify RYAN LAWRENCE and CARL QUAMINA. The CI positively identified RYAN DENNIS LAWRENCE as the subject known as "TRIN" and CARL QUAMINA as the subject known as" Carl".

4. On or about August 04, 2009, Detective Armstrong and Sgt. Eugene Halsey during surveillance at 1732 8th Street, Sarasota, Florida observed a red Ford Mustang operated by a W/M subject who dropped off a W/F subject who entered 1732 8th Street then quickly exited the apartment. SPD detectives suspected the W/F subject purchased narcotics from inside the apartment. Detectives then had a SPD Patrol unit conduct a traffic stop on the vehicle in which the W/F passenger of the vehicle, identified as TIFFANY BARAN, W/F, DOB 09/04/1984, was arrested after having found in her possession a baggie containing powder cocaine (1 gram). Detective's Armstrong and Sgt. Halsey did conduct a post-Miranda interview in which BARAN admitted she had just purchased the powder cocaine from subjects known as "TRIN" and "CARL" for $50.00 in U.S. currency. BARAN advised that while inside the residence, she did observe a plastic baggie containing crack cocaine, additional powder cocaine, and prescription pills. BARAN also advised that she had been dealing with both "TRIN" and "CARL" on a daily basis for over three years. BARAN did provide a cellular phone number for "TRIN" as 941-301-6623, which confirms the number provided by the CI for LAWRENCE..

5 On or about August 05, 2009, an investigative briefing at the Sarasota Police Department (SPD) Narcotics office for a buy-walk operation was held concerning the location at 1732 8th Street, Sarasota, Florida, present at the briefing included ATF and SPD personnel.

6. On or about August 05, 2009, at approximately 1800 hours, Law Enforcement met with CI at an undisclosed location. The CI was briefed on this investigation and provided with seven hundred fifty dollars ($750.00) in pre-recorded U.S. currency to purchase crack cocaine at 1732 8th Street, Sarasota, Florida 34236 from known targets "TRIN" and "CARL". At approximately 1827 hours, a CI placed a controlled recorded phone call to 941-301-6623 and spoke with "TRIN" (RYAN LAWRENCE). During this conversation, the CI requested seven hundred dollars ($700.00) worth of "hard", referring to crack cocaine base, and requested to be able to come to the residence to make that purchase. On the phone, "TRIN" acknowledged "hard" and said it would be okay to come over. The CI was searched thoroughly and

found to be free of any contraband and/or U.S. currency. The vehicle operated by CI was also searched thoroughly and found to be free of any contraband and/or U.S. currency. The CI was provided electronic monitoring devices that were found to be in proper working order at 1933 hours by SPD Narcotics Technician Detective Keith Baker.

7. On or about August 05, 2009, at 1942 hours, all SPD and ATF personnel did respond to the target location of 1732 8th Street, Sarasota, Florida. Detectives Armstrong and Quinlan, and ATF Special Agent Yannick DesLauriers did follow the CI for this investigation directly to 1732 8th Street, Sarasota, Florida and kept constant visual contact until their arrival. The CI arrived at the target location at 1956 hours and then entered the residence of 1732 8th Street, Sarasota, Florida. Once inside the residence, there was recorded conversation involving the purchase of seven hundred fifty dollars ($750.00) of crack cocaine between the CI, LAWRENCE, and QUAMINA. While inside the residence, the CI speaking directly with LAWRENCE asked if they could buy seven hundred fifty dollars ($750.00) worth of crack cocaine. At this time, LAWRENCE told QUAMINA to count out ninety (90) pieces of crack cocaine from a pill bottle in the kitchen area, where at this time QUAMINA counted out ninety (90) pieces of crack cocaine from the pill bottle, placing them inside a plastic baggie, and giving it to the CI. The CI gave the buy-money to LAWRENCE, who only took seven hundred dollars ($700.00). During this conversation, the CI inquired if the LAWRENCE or QUAMINA would be interested in acquiring firearms. Both LAWRENCE and QUAMINA said they would be very interested in obtaining the firearms. LAWRENCE further stated he would be interested in a possible trade of crack cocaine, a.k.a. "cookies", for firearms. LAWRENCE said that he would cook up whole "cookies" for next time instead of pieces.

8. On or about August 05, 2009, the CI did exit the residence of 1732 8th Street, Sarasota, Florida at 2006 hours and were followed directly from the residence to an undisclosed meeting location where the CI were searched and debriefed. The CI immediately turned over one (1) plastic baggie containing ninety (90) pieces of crack cocaine (field testing positive for crack cocaine). This cocaine and plastic baggie was weighed at approximately 10.4 grams by Detective Quinlan. During the debriefing of the CI was searched thoroughly and was found to be free of any contraband and/or U.S. currency. The vehicle the CI were driving was also searched and found to be free of any contraband and/or U.S. currency.

9. On or about August 05, 2009, Detectives Armstrong and Quinlan along with ATF agents placed the crack cocaine into SPD Property as evidence under Record #288090. The purchased substance from LAWRENCE tested positive for crack cocaine weighing approximately 10.4 grams gross weight.

10. On or about August 07, 2009, at approximately 1900 hours Detective Quinlan and your affiant attempted a buy-walk crack cocaine operation at the residence of 1732 8th Street, Sarasota, Florida utilizing the CI with known targets RYAN LAWRENCE and CARL QUAMINA. The CI was also briefed by your affiant reference the conversation with the suspects involving the trade of firearms for ounces of crack cocaine. The CI arrived at the residence and advised law enforcement that the targets were not present at the location. At approximately 1921 hours, law enforcement instructed the CI to make phone contact with LAWRENCE to request $200 worth of rock cocaine and see if he would respond to the location. The CI made phone contact with LAWRENCE and requested $200 worth of crack cocaine. LAWRENCE told the CI that he would have "REDMAN" respond to the location to provide the crack cocaine to the CI, REDMAN is an unidentified associate of LAWRENCE and QUAMINA. At this time the CI was told to leave the location without purchasing any narcotics and meet with law enforcement.

11. On or about August 11, 2009, at approximately 1800 hours, Detective Armstrong and your affiant attempted a buy-walk operation with CI, RYAN LAWRENCE and CARL QUAMINA. This operation was to take place at the residence of 1732 8th Street, Sarasota, Florida. In this operation, the CI were instructed to purchase $400 worth of crack cocaine from Ryan LAWRENCE and/or Carl QUAMINA at the location and to meet with them to discuss the prior planned purchase of firearms that LAWRENCE and QUAMINA were trying to arrange, trading crack cocaine "cookies" for firearms.

12. On or about August 11, 2009, at approximately 1830 hours CI were provided the $400.00 in prerecorded U.S. currency. At approximately 1841 hours, CI made phone contact with LAWRENCE at 941-301-6623 and requested $400 worth of crack cocaine. LAWRENCE told the CI he needed at least an hour and would meet at the residence (this call was not recorded). The CI waited approximately one hour and went to 1732 8th Street, Sarasota, Florida where the CI waited for LAWRENCE to arrive.

13. On or about August 11, 2009, while the CI waited at the residence, a female, unknown to the CI, arrived at the location looking to make a purchase from LAWRENCE. This unknown female used the CI cellular phone to make a phone call to 941-879-5906 inquiring when LAWRENCE will be at the apartment. A few moments later, LAWRENCE arrived at the residence accompanied by an unknown older H/M subject at 2118 hours. After arriving all parties went inside the residence and the CI began a conversation with LAWRENCE about having $400 to purchase cocaine. LAWRENCE told the CI that he is currently out of product saying "no hard here", referring to he is out of crack cocaine at the time. During this time, the unknown female who was in the residence purchased suspected Roxicodone pills from LAWRENCE and then left the residence.

14. On or about August 11, 2009, after the unknown female left, SPD/ATF CI engaged in conversation with LAWRENCE about the individual that has the firearms. The CI showed LAWRENCE a picture of firearms on the cellular phone that was emailed to the CI by ATF Agents prior to this investigation. The CI also provided prices (also supplied by ATF) of $500 for the pictured fully automatic Mack 10 machine gun, $300 for the short barreled shotgun, and $200 for all of the handguns. LAWRENCE acknowledged the photograph and told the CI that he is interested in purchasing three (3) guns. LAWRENCE also stated he will be getting with "CARL" and "J" to see what they wanted. During this conversation with LAWRENCE, the CI again told LAWRENCE that the individual that has the firearms would be interested in a crack cocaine "cookie" and would trade the firearms for crack and/or money. The CI also told LAWRENCE the individual that has the firearms will be in town tomorrow on August 12, 2009, and LAWRENCE could meet with him at that time to purchase and/or trade for the firearms.

15. On or about August 12, 2009, ATF and SPD conducted a planned buy-bust operation involving the selling of firearms to prohibited individual's RYAN LAWRENCE and CARL QUAMINA. A check with Immigration, Customs and Enforcement (ICE), has determined that LAWRENCE is illegally in the United States. Additionally a check with Sarasota County, Florida, shows that QUAMINA is a convcted felon. Both LAWRENCE and QUAMINA planned to buy/acquire firearms from an individual (undercover ATF agent) by either trading for cocaine or buying outright with U.S. currency.

16. On or about August 12, 2009, ATF agent Carlos Montalvo along with CI met with QUAMINA and LAWRENCE at the residence of, 1732 8th Street, Sarasota, Florida and engaged in conversation initially with QUAMINA about his wanting to purchase a firearm. The agent had in his possession an assortment of firearms and showed the firearms to QUAMINA. QUAMINA picked out a Glock 17, 9mm serial number BAA587US and paid two hundred fifty dollars ($250.00) in U.S. currency for the purchase of the firearm. LAWRENCE, also standing there and looking at the assortment of firearms, picked out an EEA .38 special revolver, model EA/P serial number 1051844 and paid two hundred dollars ($200.00) for that firearm. Further conversation between LAWRENCE and the agent took place where it was decided between the agent and LAWRENCE that he would also purchase a RPB INDUSTRIES INC. machine gun, model MAC 11, caliber .380, serial number A333 for an additional five hundred dollars ($500.00) knowing that the firearm was in fact a machine gun. The agent and LAWRENCE agreed that the agent would front LAWRENCE the machine gun and that he would come back tomorrow (08/13/09) to pick up the five hundred dollars ($500.00).

17. On or about August 12, 2009, based on the above actions by LAWRENCE and QUAMINA, the agent gave a prearranged takedown signal and LAWRENCE and QUAMINA were arrested by ATF and SPD teams members at approximately 1915 hours at the residence of 1732 8th Street, Sarasota, Florida. After the arrest of LAWRENCE and QUAMINA both were read Miranda and asked if they

understood their rights as read and both agreed that they did. Miranda was read by Detective Armstrong and in the presence of Detective Quinlan and your affaint. Further after acknowledging their Miranda rights, both LAWRENCE and QUAMINA stated they did not wish to speak with law enforcement. At this time approximately 2030 hours LAWRENCE and QUIMINA were booked into the Sarasota County Jail until they could be brought forthwith to a U.S. Magistrate Judge in Tampa, Florida.

    18. On or about August 13, 2009, at approximately 0930 hours SPD Detectives transported LAWRENCE and QUAMINA from Sarasota, Florida to Tampa Florida for their initial appearance. While being transproted, LAWRENCE made unsolicited statements to Detectives Armstrong and Quinlan. LAWRENCE stated that "I know what happened; I put the pieces of the puzzle together." LAWRENCE further stated "put me in a cell with Muta (a individual LAWRENCE thinks is responsible for his arrest) and I'll beat his ass." LAWRENCE also said that "I will stab him in the neck eight times and he won't see it coming." Detective Armstrong told LAWRENCE that they did not want to discuss his case unless it was in a setting with a proffer and agreed upon by his attorney. LAWRENCE ,even after the statements Detective Armstrong, made further statements and went on to say "I know who set me up. It was cousin J, the auntie, uncle and some Hispanic dude."

19.  During the above investigation, and based upon your affiant's training and experience, your affiant respectfully submits that there exists has probable cause to believe that RYAN LAWRENCE and CARL QUAMINA has committed the offense knowingly or intentionally manufacturing, distributing and possessing with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).  There is also probable cause to believe that RYAN LAWRENCE also committed the offense of who is an alien, is illegally or unlawfully in the United States is in violation of Title 18, United States Code, Section 922(g)(5) if he is in possession of a firearm, that is the EEA .38 special revolver, model EA/P serial number 1051844 and Title 18, United States Code, Section 922(o)(1), it shall be unlawful for any person to transfer or possess a machine gun, that is the model MAC 11, caliber .380, serial number A333.  There is probable cause to believe that CARL QUAMINA, a person who has been convicted of a felony, cannot possess any firearm in or affecting commerce, or to receive any firearm which has been shipped or transported in interstate or foreign commerce, that is a Glock 17, 9mm serial number BAA587US, in violation of, Title 18, United States Code, Section 922(g)(1).

FURTHER AFFIANT SAYETH NAUGHT.

_____
James J. Booth
Special Agent
U.S. Bureau of Alcohol, Tobacco, Firearms
and Explosives

Subscribed and sworn to before me this
13th day of August 2009.

_____
MARK A. PIZZO
United States Magistrate Judge